No. 37,603

LILLIAN B. PETTY, *Appellant,* v. RYLAND C. PETTY, *Appellee.*

(207 P. 2d 428)

Opinion filed June 11, 1949.

*Clarence J. Malone,* of Topeka, argued the cause, and *James Malone,* of Topeka, was with him on the briefs for the appellant.

*Ralph W. Oman,* of Topeka, argued the cause, and *Robert Stone, James A. McClure* and *Robert L. Webb,* all of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

ARN, J.: This action is a controversy between parties who were husband and wife prior to their divorce in 1936, and who seek to determine their rights and obligations under a "separation agree-

ment" which they executed on May 1, 1933. This same separation agreement was considered by this court in an earlier case involving the same parties (*Petty v. Petty*, 147 Kan. 342, 76 P. 2d 850).

In the instant case defendant's motion for judgment on the pleadings was sustained by order of the district court and plaintiff has appealed.

The petition alleges that plaintiff and defendant were married in January, 1924, have two children who are now aged twenty-one and twenty-two, and that the "separation agreement" entered into on May 1, 1933, and attached to the petition as Exhibit A, provided that defendant should pay to plaintiff for her support and for the maintenance and education of the two children, two-thirds of defendant's monthly income until plaintiff remarried or until the children graduated from college, and that defendant would continue in force certain insurance policies with plaintiff as beneficiary. The petition then set forth the divorce proceedings in the district court of Saline county and the appeal therefrom which resulted in a decision by this court (*Petty v. Petty*, supra) upholding and approving the same "separation agreement" with which we are here concerned; and alleged that thereafter the district court of Saline county entered a judgment as follows:

". . . And now on this 23rd day of May, 1938, counsel for the parties having failed to agree upon the form of the Journal Entry to be entered spreading said mandate and correcting said judgment, the matter is taken up by the court on its own motion, and the court being fully advised in the matter finds that the mandate of the Supreme Court of the State of Kansas in case No. 33613, wherein Ryland C. Petty was plaintiff and Lillian B. Petty was defendant, and the judgment of said court in said case should be spread upon and entered of record in this court, and that in compliance with the decision and judgment of the Supreme Court of the State of Kansas made and entered in the above entitled case, the judgment of this court heretofore of record must be amended and changed to comply with the said order and directions of the Supreme Court made on the 5th day of March, 1938.

"ORDER

"It is therefore ordered by the court that said mandate and decision of the Supreme Court is ordered spread upon the records of this court.

"It is further ordered that judgment in the above entitled case be entered as follows:

"JUDGMENT

"It is therefore considered, ordered, adjudged and decreed by the court that plaintiff be granted a divorce from defendant upon the ground of gross neglect of duty, the same to become absolute after six months from the date

of rendition of judgment in this case; that defendant is awarded the custody of the two minor children, Denoya, age 11 years, and Marcheta, age 10 years; that the separation agreement heretofore entered into by and between the parties plaintiff and defendant, *a true and correct copy of which is hereto attached, marked Exhibit A, and hereby made a part hereof, be and the same is hereby approved by the court . . .*" (Emphasis supplied.)

The petition alleged further that defendant has made no payments to plaintiff since May 1, 1933, except the total sum of $5,710, the last payment of $25 having been made in June, 1943; that such payments were less than two-thirds of defendant's earnings; that defendant has, since the supreme court decision in 1938, concealed his whereabouts and residence from plaintiff until plaintiff recently discovered defendant, remarried and working in Topeka, Kan.; that demand for payments under the terms of the "separation agreement" have been made upon defendant, and when he refused to make any payment whatever, this action was instituted. The petition continued to allege that plaintiff had performed all the conditions she was obligated to perform under the separation agreement and has maintained a home for and supported the children; that a college education for the children is dependent upon specific performance of the "separation agreement" by defendant; that defendant is able to comply with the terms of said agreement, and that plaintiff has no adequate remedy at law. The prayer of the petition is for an accounting by defendant for two-thirds of his income since May 1, 1933, for specific performance of the "separation agreement," and for an order directing defendant to continue his insurance policies with plaintiff as beneficiary.

Attached to the petition as Exhibit A is the separation agreement and property settlement as follows:

"This Agreement, Made and Entered into this 1 day of May, 1933, by and between Lillian Petty, hereinafter termed wife, and Ryland C. Petty, hereinafter termed husband, both of the city of Salina, Saline County, Kansas.

"Witnesseth, That whereas, the parties hereto have developed differences which make it impossible for them to continue to live together; and,

"Whereas, it is the desire of said parties to cause a separation agreement and property settlement agreement to be drawn up;

"Now, Therefore, It is mutually agreed by and between the parties hereto that the husband will pay to the wife for the support of said wife and for the support and maintenance and education of the minor children of said parties, Denoya Petty and Marcheta Petty, two-thirds of husband's income until the re-marriage of the wife or until the said children have been graduated from High School and College if said wife does not remarry before that time. After said children have graduated from High School and College, the wife not

having re-married, the husband agrees, from that time until her remarriage, or as long as the wife shall live, if the wife never remarries, to pay to the wife one-third of his income.

"Provided, however, it is further mutually agreed that in the event of the re-marriage of the wife the husband will pay to the wife for the use of said children and for their maintenance, education and support, the sum of Thirty Dollars ($30.00) per month until said children and each of them finish High School.

"Said husband further agreed that, in the event of the re-marriage of said wife, he will pay from and beginning with the date of said re-marriage, to said wife a separate and additional sum of Seventy Dollars ($70.00), said sum so paid to be received and held in trust by said wife and to be used by her for the express and only purpose of paying the expenses of a college education for each and both of said children of said parties. Expressly Provided, However, that if said payments of $30.00 and $70.00, as aforesaid shall exceed two-thirds of husband's income at any time during which said payments are herein agreed to be made, the total of said monthly payments shall not exceed two-thirds of husband's current income and, in that event, the said $30.00 payments and the said $70.00 payments shall be reduced proportionately.

"It is mutually agreed further, that when said trust fund, with accrued interest, shall total the sum of Eight Thousand Dollars ($8,000.00), said payments shall cease and determine. In the event said Trust Fund shall not have attained a total sum of Eight Thousand Dollars ($8,000.00) by the time said children and each and both of them are ready to enter college, said husband agrees to pay and assumes the obligation of financing said college education for said children up to the amount of Six Thousand Dollars ($6,000), less any amount then accumulated as aforesaid in said trust fund.

"It is further mutually agreed that the wife shall have the exclusive custody and control of said children of the parties and that the husband shall have the right and privilege of seeing and visiting with said children at all reasonable times.

"Said parties agree that the wife is the owner of Willis-Knight 1931, Club Sedan Automobile and that the husband is the owner of a Whippet 1930 Sedan Automobile. Each party hereby waives any claim to or interest in the said automobile of the other and herewith each delivers to the other a duly executed Bill of Sale to said Automobile to the other belonging.

"The husband agrees that he will continue in full force and effect the insurance policies that he now owns by the payment of the premiums and all premiums as same become due and payable according to the terms and provisions of said policies, that he will not change the beneficiary therein named and that he will continue the principal sum named in each policy as payable to said wife as beneficiary precisely as prior to the execution of this writing and as if no difference had arisen between said parties.

"Said wife accepts the foregoing statements and covenants and agrees to pay on the part of the husband in full settlement of all of her property rights in and to the property of said husband and in full of all her rights and claims for support from the husband hereafter. Neither party shall have or

claim any of the property of the other or any right, title or interest in and to any of the property of the other party hereto whether now owned or hereafter acquired. This being a full, complete and permanent property settlement made by each of said parties hereto with full knowledge of all property owned and possessed by the other party hereto. In the event either party hereto shall secure a divorce from the other hereto that party shall cause this separation agreement and property settlement agreement to be presented and approved by the Court, and said wife shall have judgment therein for the payments therein agreed to be paid to her directly or to her for the use and benefit of said children. No other or further judgment for support, alimony, temporary or permanent, suit money, costs or attorney fees shall be applied for or obtained in any divorce action. The party bringing any divorce action shall pay the costs in said action resulting.

"The wife further agrees not to incur any debts or buy anything henceforth upon the credit of the husband. Said husband shall be free from any liability on account of any debts by wife contracted after the execution of said writing, precisely as if said parties had never been husband and wife. It is understood expressly by said parties that this agreement is binding upon said parties whether or not a divorce is granted to either party hereto.

"From and after the execution of this Agreement the parties hereto will live separate and apart.

"In Witness Whereof, The parties hereto have hereunto set their hands the day and year last first above written, in duplicate.

> "(Signed)  LILLIAN PETTY
> Wife
> "(Signed)  RYLAND C. PETTY
> Husband"

Defendant filed an answer which alleged ten separately numbered defenses, and concluded with a last paragraph in the nature of a demurrer to plaintiff's petition upon some of the same grounds of defense set forth in the answer proper.

Defendant then filed a "motion for judgment on the pleadings" which the district court sustained. It is from this ruling that plaintiff appeals.

No reply was filed, so we return now to a more detailed discussion of defendant's answer. The first, second, third and sixth alleged defenses raise obvious issues of fact and therefore need not be considered here. The fourth and fifth defenses alleged by the answer plead respectively the statute of limitations and laches, which appellee briefs and argues as presenting questions of law. However, under the allegations of the petition that defendant had absented and concealed himself since 1938, and under plaintiff's theory of recovery upon contract, these two defenses also involve some question of fact and need not be considered in determining

the sufficiency of the pleadings. The other defenses included in the answer allege strictly legal defenses which we may consider as the questions involved in this appeal.

*Seventh Defense:*

Defendant alleges that the contract became merged in the judgment of the district court of Saline county and thereby lost its identity as an instrument separate and apart from the judgment; that the judgment is void; and the provisions of the contract itself called for a merger with any judgment thereafter rendered in a divorce action so that plaintiff acquiesced in the merger constituting a full and complete waiver of the contract.

*Eighth Defense:*

Here it is alleged that by reason of the merger alleged in the seventh defense, plaintiff is estopped to claim under the contract and to maintain this action.

*Ninth Defense:*

It is alleged that both children having attained their majorities, plaintiff has no capacity to maintain this action on their behalf.

*Tenth Defense:*

Defendant contends this is an equitable action, and alleges that plaintiff has an adequate remedy at law.

The motion for judgment on the pleadings raised the four questions of law included in the answer and set forth above as defenses seven, eight, nine and ten. The one designated as "Seventh Defense" is stressed by appellant, and apparently attracted the particular attention of the trial court according to a letter by the court advising counsel that defendant's motion for judgment on the pleadings had been sustained for the reason advanced in paragraph seven of the answer.

Counsel for appellee argue that the trial court in its order and decree of May 23, 1938, which we have quoted above, made the separation agreement a part of and merged it with the judgment. Appellee then concludes that such a "merger" having been effected, the appellant must resort to an enforcement of her Saline county judgment—which judgment as a matter of law is unenforceable and void. Authorities are cited to the effect that where there is such a "merger" of the contract with the judgment rendered thereon, the rights of the parties rest on the judgment and not on the agreement. The question immediately before us, then, is whether the trial court by its decree of May 23, 1938, canceled the contract (much the same

as a note is canceled and incorporated in a judgment of foreclosure) and made its terms and provisions the judgment of the court.

Of course this court in the instant appeal is not concerned with the status of the Saline district court judgment of May 23, 1938. We must, however, look to that decree to determine the merit of appellee's contention with respect to the so-called "merger" of the contract with the judgment. When this case was here previously (*Petty v. Petty*, 147 Kan. 342), the mandate of this court was:

"that the judgment of the district court be affirmed in part and reversed in part, in harmony with the views as expressed in the court's written opinion . . ."

In that case the trial court had held this same separation agreement void, and we said that was error. Our opinion, dated March 5, 1938, concerning directions to the trial court regarding that instrument ordered nothing more than: "The court should be directed to approve it." From a careful reading of the Saline district court decree of May 23, 1938, recited above, we take the view that it was the purpose and intent of that court to carry out the mandate and order of this court. That decree specifically recited that it was being made *"in compliance with the decision and judgment of the Supreme Court. . . . the judgment of this court heretofore of record must be amended and changed to comply with the said order and directions of the Supreme Court made on the 5th day of March, 1938."* Certainly, this court on March 5, 1938, did nothing more than direct the district court to *approve* the separation agreement. Following the foregoing recitation of its intention to comply with the supreme court mandate, the district court then attached to its decree a copy of the separation agreement, made the separation agreement a part thereof, and approved it. Did the language of the decree *"a true and correct copy of which is hereto attached . . . and hereby made a part hereof"* have the effect of cancelling the separation agreement as such and incorporating or "merging" it with the judgment itself? We do not think that such was the purpose or intention of the Saline district court, nor do we think the language used in the decree merits or fairly implies such a construction. The words "hereto attached" and "hereby made a part hereof" served only to identify the instrument which the court "approved." Actually, nothing more was done than to approve the separation agreement—no judgment was rendered pursuant to its terms.

Appellee also directs attention to the following language of the separation agreement:

". . . In the event either party hereto shall secure a divorce from the other hereto that party shall cause this separation agreement and property settlement agreement to be presented and approved by the Court, and said wife shall have judgment therein for the payments therein agreed to be paid to her directly or to her for the use and benefit of said children. No other or further judgment for support, alimony, temporary or permanent, suit money, costs or attorney fees shall be applied for or obtained in any divorce action."

and contends that by such language the parties themselves stipulated that in event of a divorce action the separation agreement must become a part of and be incorporated in the judgment to be rendered. Regardless of the construction which could be placed upon this paragraph of the instrument, the fact remains that the separation agreement was not incorporated or "merged" with the judgment which has long since become final.

There may be jurisdictions (some are cited by appellee) where incorporation of the contract in the decree by making it a part thereof places it in the status of a judgment or court order so that it can be enforced only as the judgment of the court. Such a rule does not tend to encourage the solution of marital difficulties by contract rather than by recourse to the courts. The tendency in this state has been for the courts to approve and carry out agreements of the parties where they have made a comprehensive contract which is fair and reasonable in its terms (*Perkins v. Perkins,* 154 Kan. 73, 114 P. 2d 804).

To adopt the rule urged by appellee, and to say the district court of Saline county canceled the separation agreement and incorporated or "merged" it into a court order of judgment by merely attaching it as an exhibit and making it a part thereof, would not be consistent with encouraging the solution of marital difficulties by the parties themselves. When it is expedient that such contracts be consolidated with or incorporated or "merged" in the judgment, as urged here by appellee, the courts must accomplish that purpose by positive and intentional language. The district court of Saline county did not do so in its order of judgment of May 23, 1938.

For example, in *Hullet v. Hullet,* 133 Kan. 738, 3 P. 2d 470, an antenuptial contract was said to have been "merged" in the judgment. But there the contract divided real property between the parties and the decree of judgment provided:

". . . and which said contract the court finds makes a fair and equitable division of property as between plaintiff and defendant; and said contract is approved and confirmed, and each of the parties hereto is ordered and adjudged full ownership and title in the property as agreed in said contract." (l. c. 740.)

By such order the court clearly spelled out the terms of the contract in its judgment decree. The decree left the parties in the same place as would have the terms of the contract in the absence of a decree.

Appellee relies upon *Conway v. Conway,* 130 Kan. 848, 288 Pac. 566, involving a separation agreement by which alimony was to be paid at the rate of $200 per month (see agreement in 133 Kan. 148, 149) until the remarriage or death of the plaintiff. The judgment of the trial court ordered defendant to pay $200 per month alimony until the remarriage or death of the plaintiff. That is to say, the very terms of the separation agreement were incorporated in and made the judgment of the trial court, but there was no approval of the agreement, nor was it mentioned in the order of judgment. Under those circumstances (quite different from the instant case) we merely held that the total sum of alimony was not definitely fixed and therefore the judgment allowing $200 per month for an indefinite period was void; that as a judgment it was void even though the parties had agreed to it because they could not confer jurisdiction by agreement. When the case came to this court a second time (*Conway v. Conway,* 133 Kan. 148, 298 Pac. 744) upon an action by the wife for specific performance of the contract, that relief was denied because there was then no contract. As was stated in syllabus 4: "The unenforceable provisions of the contract were, at the request of the parties, embodied in a decree for alimony, which became final."

In *Hyde v. Hyde,* 143 Kan. 660, 56 P. 2d 437, there was a separation agreement made in contemplation of an action for divorce which action was filed the following day. In the divorce decree the trial court approved the agreement. Subsequently the plaintiff brought an action in specific performance and while the action was pending, the parties entered into stipulations and made a compromise settlement. Judgment was rendered accordingly, and thereafter the trial court modified the judgment and plaintiff appealed. We reversed the trial court because the judgment below had been rendered upon the consent (or stipulation) of the parties and provided for its own methods of modification, and therefore the trial

court was without power to modify it. Later defendant again moved for a modification and the case was here again upon the same question (*Hyde v. Hyde*, 147 Kan. 134, 75 P. 2d 1023). We upheld the order of the trial court refusing to modify the first judgment, saying that the judgment rendered in the specific performance action, having been agreed to by stipulation, was a contract. While the Hyde cases are not identical with the instant case, the parties there were left to enforce their agreement (a contract made by stipulation) separate and apart from the original judgment. Appellee would distinguish the Hyde cases from the instant case because there the separation agreement was altered somewhat by signature and consent of the parties to a stipulation which was filed of record in the divorce action, while in the instant case there was no such alteration. It is difficult to observe a wide distinction between the Hyde cases and the one now before us. In the instant case the separation agreement was also "consented to" and "signed" by the parties, although that was done prior to the divorce action instead of by stipulation in the pending case. In both cases the agreements were *approved* by the court—and we might say in both cases the parties are *by judgment bound by the terms of the contract.*

In *Cowell v. Cowell*, 114 Kan. 605, 220 Pac. 211, the property settlement agreement was apparently entered into in court and embodied in the decree. It was held that the parties were, by judgment, bound by the terms of the contract. The contract there entered into was embodied in and really constituted the decree itself—but it was not a "merger" such as would require the parties to look to the judgment for relief rather than specific performance, if they had otherwise been entitled to such relief. Speaking of the property settlement stipulation in the Cowell case, we said:

"The decree of divorce granted recited the stipulation and entered judgment in accordance therewith and it was held that the decree was enforceable by the children in a suit in equity.

"That it is evidenced by a decree of a court of record is, of course, no objection to the agreement. That the parties could have accomplished the same disposition of their property by proper instruments executed by them and recorded, no one doubts. There is no just reason why they could not accomplish the same purpose by an agreement which they caused to be entered in a decree of a court of record, in a suit to which they were parties." (l. c. 608.)

These cases seem to be in accord with the conclusion we have already indicated above, that the separation agreement here under

consideration was not incorporated or "merged" in the district court judgment of May 23, 1938, so that it lost its identity as a separate and distinct contract.

The next question for our consideration is raised by the ninth defense of the answer—that the plaintiff has no capacity to maintain this action on behalf of her children who have now reached the age of majority. It should be noted that the separation agreement provides for no payments to the children. The instrument provides only for payments to the wife, with one of the conditions as to the amount and duration of those payments being the completion of the children's education. Such a condition seems to be a reasonable provision in this type of contract, and we know of no authority or rule·of law which sustains appellee's contention in this respect.

It is next contended, and urged as the tenth defense in the answer, that appellant has an adequate remedy at law which will preclude her relief at the hands of a court of equity. In support of this phase of the answer it is argued that legal remedies such as attachment, garnishment, execution and proceedings in aid of execution are available—but this argument is predicated upon appellee's theory that the separation agreement was "merged" in the district court judgment, with which we have already indicated our disagreement.

This case is before us on appeal from the trial court's order sustaining defendant's motion for judgment on the pleadings. We have, therefore, been primarily concerned with the sufficiency of the petition. With all of the allegations of the petition accepted as true, we cannot say it is apparent upon the face of the pleadings that defendant was·entitled to judgment as a matter of law.

In accordance with the views herein expressed, the judgment of the district court is reversed with directions to overrule the motion for judgment on the pleadings.

WEDELL and PRICE, JJ., dissent.