The opinion of the court was delivered by
Valentine, J.:
This was an action brought by Susan Walrath against W. H. Walrath, for divorce and alimony. On September 27,1880, judgment was rendered in her favor, and against the defendant, granting her the divorce prayed for, giving to her the homestead, valued at about $3,000, and also giving to her all the household goods and furniture, and everything else upon the premises, except the clothing and personal effects of W. H. Walrath; and the judgment gave her, in money, the sum of $1,500 — $1,000 of which was to be paid immediately, and the other $500 in one year; and it also gave to her the additional sum of $200, as attorneys’1 fees, payable immediately; and the judgment further provided, “that said defendant further pay to said plaintiff, on January 1, 1881, as and for the support and maintenance of said infant children, Arthur and Grayson Walrath, the sum of $200, being $100 for each of said children, and a like sum of $100 for each of said children, upon the first day of January of each year thereafter, until said children have respectively attained the age of fifteen years.” The judgment also gave the custody of said minor children, aged respectively *397 nine and eleven years, to the plaintiff. The court also extended the time to the defendant for making a case for the supreme court, and the defendant was preparing such case for the purpose of taking the case to the supreme court, when the case was compromised and settled, as hereafter stated.
Previous to the rendering of this judgment, however, the creditors of the defendant, W. H. Walrath, had commenced actions against him in the United States circuit court for the district of Kansas, and had attached all his property that was subject to attachment. The claims of his creditors amounted in the aggregate to about $17,000. The defendant’s property was advertised to be sold under these attachment proceedings, on November 4,1880. After the property was advertised for sale, the defendant and his creditors and the plaintiff commenced negotiations to effect a compromise and settlement between all the parties. The 4th day of November, however, arrived before any settlement was’ completed, and the United States marshal had actually commenced to sell the defendant’s property; but by consent of all the parties the sale was postponed one day, and the parties made further efforts to compromise and settle their difficulties, and on the 5th day of November, 1880, the settlement was finally accomplished, the creditors receiving a pro rata share of their claims, and the plaintiff receiving $1,200 in full satisfaction of her claim, and the defendant paying all the costs of the divorce case. As between the plaintiff and defendant, the following instrument was drawn up and executed, to wit:
(Court and title omitted.) “ For and in consideration of the sum of one thousand dollars, to me in hand paid, the receipt whereof is hereby acknowledged, and also in consideration of the sum of two hundred dollars, as attorneys’ fees, awarded in said action, and also in consideration of the payment of all costs in said action, I hereby satisfy and discharge the money part of the judgment rendered in said action, including the allowance made me for the support and maintenance of Arthur and Grayson Walrath until they reach the age of fifteen years, respectively, but in no wise affecting the balance of said judgment and decree. (Signed) Susan Walrath.
“November 5, 1880, received twelve hundred dollars on within. — E. M. Hulett.”
*398 This instrument was drawn up by E. M. Hulett, one of the plaintiff’s attorneys, and was signed by the -plaintiff in person, and the money therein provided for was paid by the defendant to Hulett, and Hulett paid $1,000 thereof to the plaintiff, and retained the other $200 as attorneys’ fees. The creditors of the defendant, who were about to have the defendant’s property sold under the attachment proceedings, made the settlement with the plaintiff a condition precedent to the settlement of their claims; and all parties believed that a final and complete settlement had been accomplished. In May, 1881, the plaintiff caused an execution to be issued from the district court on the judgment previously rendered in her favor against the defendant, to collect the $200 which had been ordered by the judgment to be paid to her by the defendant on the first day of January, 1881, for the support and maintenance of the two minor children; and immediately thereafter the defendant filed a motion and petition in the district court to quash and set aside said execution, and to-have the sheriff return the same without any further action, thereon, and to direct the clerk not to issue any further execution against the defendant on said judgment, claiming that said judgment had been fully paid and satisfied. This motion came up for hearing, and was he.ard on affidavits. The plaintiff appeared by her attorneys, Hulett & McCleverty, and the defendant appeared by J. H. Sallee, his attorney. No question was then raised, nor has any since been raised, in that court or in this, with reference to whether this was the defendant’s proper remedy or not, or whether he had adopted the proper practice to obtain relief. The court below overruled the defendant’s motion, and'denied him any relief. The defendant then brought the case to this court for review.
The only question presented in this court by counsel on either side is, whether or not the said j udgment for the said-$200, awarded to the plaintiff for the support and mainte-. nance of the minor children, had been paid and satisfied bj the compromise and settlement between the parties on November 5th, 1880. This question we must answer in the affirmative. We think the judgment was satisfied. We *399 think the case comes squarely within the decision rendered in the case of Clay v. Hoysradt, 8 Kas. 74. See also upon this question,- Reid v. Hibbard, 6 Wis. 175. In this case, as in the Clay-Hoysradt case, the defendant was dissatisfied with the judgment of the trial court; and in this, as in that, he had a right to appeal, and intended to appeal, and was preparing to take his appeal. In this case the appeal, however, was to be from the district court to the supreme court, while in that it was to be from a justice of the peace to the district court; but the principle underlying both cases is the same. In the present case, howevei’, there is another consideration for the plaintiff’s agreement, which was not in the Clay-Hoysradt case. In this case, if the plaintiff had not made the settlement and agreed to the satisfaction of her entire judgment, probably she never would have received anything; for the creditors of the defendant would have sold all this property, and left him without anything with which to-pay her judgment. Upon this point, see the case of Harper v. Graham, 20 Ohio, 105.
The plaintiff however claims, through her attorneys, that she had no power to make the settlement which she did make, nor to satisfy said judgment, which she attempted to do, and refers, as authority for this claim, to § 645 of the civil code. This section reads as follows:
“Sec. 645. When a divorce is granted,the court shall make-provision for guardianship, custody, support and education of the minor children of the marriage, and may modify or change-any order in this respect whenever circumstances render such change proper.”
Now we do not think that this section affects the case in the least. The minor children were not parties to the action in which the judgment was rendered; the judgment was not rendered in their favor; the money was not ordered to be paid to them, and they had no control over it whatever. The judgment was in favor of the plaintiff, and the plaintiff alone; and the money was ordered to be paid to her, and to her alone; and she had the entire control over it. Of course the defendant is under obligation, legal, moral, and natural, to support *400 his minor children; but he is under no obligation to pay money to his divorced wife for any such purpose. He was under legal obligation, by force of said judgment, to pay her $200 a year to support aud maintain his minor children; but by the settlement and agreement made between her and him and his creditors, she released him from that obligation, and he is now under no obligation to her to pay her anything. Of course he is still under obligation to support and maintain his minor children. He has always been under such obligation ever since he had any children to support, and always will be under such obligation as long as he has any minor children; but probably he would prefer to support and maintain his children directly, and on his own account, and would not wish to do it indirectly, and through the agency of his divorced wife. Possibly he might not wish to trust his money for the support of his children with a woman who seemingly has such slight regard for the obligations of contracts, promises and agreements.
The judgment and order upon the defendant’s motion will be reversed, and the cause remanded, with the order that the motion be sustained.
All the Justices concurring.